

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

13 CV 0652

------------------------------------------------------------- x

RICHARD ROSARIO,

                      Plaintiff,

            -against-

CITY OF NEW YORK, CORRECTION OFFICER VARELA, SHIELD # 9470, JOHN DOE #1-4.

                      Defendants.

------------------------------------------------------------- x

Docket No.

COMPLAINT AND JURY DEMAND

ECF CASE

Plaintiff RICHARD ROSARIO, by his attorney, Stoll, Glickman & Bellina, LLP, for his complaint alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiff seeks relief for the violation of his rights under the Fourth and Fourteenth Amendments secured by 42 U.S.C. §1983, and the laws and Constitution of the State of New York.

2. The claim arises from a November 30, 2011 incident in which Officers of the New York City Department of Correction ("DOC") acting under color of state law, intentionally and willfully subjected plaintiff to, among other things, negligence, deliberate indifference, assault and battery.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action is brought pursuant to 28 USC §1331 and 42 USC §1983. Pendent party jurisdiction and supplementary jurisdiction over plaintiffs' state law claims are asserted.

5. The amount in controversy exceeds $75,000.00 excluding interest and costs.

6. Venue is laid within the United States District Court for the Southern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Southern District of New York.

## PARTIES

7. Plaintiff, Richard Rosario, is a citizen of the United States. On November 30, 2011 plaintiff was a detainee in the custody of the New York Department of Correction at the Riker's Island prison complex in Bronx County, New York.

8. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Department of Correction (or "DOC"), was responsible for the policy, practice, supervision, implementation, and conduct of all DOC matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all DOC personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the DOC, and for ensuring that the DOC personnel obey the laws of the United States and the State of New York.

9. Correction Officer Varela, Shield # 9470, upon information and belief, was an employee of the DOC on November 30, 2011, and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Varela is sued in his individual capacity.

10. All other individual defendants ("the officers"), including John Doe #1-4, individuals whose names are currently unknown to plaintiff, are employees of the DOC, and are sued in their individual capacities.

11. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

12. Within 90 days of the events giving rise to this claim, plaintiff filed written notice of claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of that notice, and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

13. On November 30, 2011, at approximately 4:00 pm, plaintiff was in DOC custody at the Eric M. Taylor Center ("EMTC"), located at Riker's Island.

14. Plaintiff was scheduled to be moved to a different housing facility on that day.

15. While awaiting his new housing, plaintiff was placed in a holding pen with several other inmates. Upon information and belief this was referred to as "pen six."

16. Nearby to pen six were other holding pens.

17. One of these pens contained only one inmate. Upon information and belief, this inmate is named Kala Singh.

18. Correction Officers, including defendants, were stationed in the area in which plaintiff, Mr. Singh, and the other inmates were held.

19. The pen containing Mr. Singh was physically closer to defendants than pen 6 was.

20. Mr. Singh was making a great deal of noise that day.

21. In response to the noise Mr. Singh was making, defendants moved him from the pen closest to them into pen six with Mr. Rosario.

22. As Mr. Singh entered pen six, he bumped into plaintiff.

23. Mr. Singh immediately became angry with plaintiff and began hitting him.

24. Plaintiff was not aggressive towards Mr. Singh.

25. Defendants responded by removing Mr. Singh from pen six and returned him to the pen he had been in previously.

26. After a few minutes Mr. Singh began once again making loud noises.

27. Approximately twenty minutes after being removed from pen six, defendants returned Mr. Singh to pen six.

28. Plaintiff did not notice that Mr. Singh had returned to pen six.

29. Plaintiff had his back turned towards Mr. Singh.

30. Mr. Singh approached plaintiff from behind, and without warning slashed plaintiff's head with a sharp object.

31. Plaintiff immediately began bleeding profusely from his head.

32. Mr. Singh hit plaintiff about his face and body multiple times.

33. Defendants separated Mr. Singh from plaintiff after a short while.

34. Plaintiff was taken to the emergency care facility at Riker's Island where he was given seventeen stitches to his head to repair the gash he suffered.

35. Plaintiff also suffered numerous cuts and bruises about his body as a result of the incident.

36. Defendants were aware, or should have been aware, that Mr. Singh posed a significant risk to plaintiff after they stopped the first attack made by Mr. Singh.

37. Nevertheless, defendants exposed plaintiff to further assault by returning Mr. Singh to pen six after having broken up the fight between them minutes earlier.

38. At all times during the events described above, the Corrections Officers were engaged

in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

39. During all of the events above described, defendants acted negligently and/or maliciously and with intent to injure plaintiff.

## DAMAGES

40. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

   a. Violation of his right to Due Process of Law under the Fourteenth Amendment to the United States Constitution;

   b. Violation of his right under the Fourth Amendment to be free from unreasonable seizure, cruel and unusual punishment as a pretrial detainee;

   c. Violation of his New York State Constitutional right under Article 1, Section 6 to Due Process of Law;

   d. Violation of his New York State Constitutional right under Article 1, Section 6, to be free from unreasonable seizure, cruel and unusual punishment as a pretrial detainee;

   e. Physical pain and suffering;

   f. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, fright, horror, grief, shame, depression, loss of sleep, and increased levels of anxiety.

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983)

41. The above paragraphs are here incorporated by reference.

42. The officers acted under color of law and conspired to deprive plaintiff of his civil, constitutional and statutory rights to due process as a pretrial detainee pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, and are liable to plaintiff under 42 U.S.C. §§1983.

43. On November 30, 2011, defendants knew, or reasonably should have known that placing Mr. Singh in the same holding pen with plaintiff created an excessive risk to plaintiff's health and safety.

44. Defendants knew, or had sufficient facts to form knowledge of the fact that Mr. Singh was prone to violent behavior.

45. Defendants knew, or had sufficient facts to form knowledge of the fact that Mr. Singh attacked plaintiff just minutes before they returned him to plaintiff's holding pen.

46. Defendants acted with deliberate indifference and/ or reckless disregard for plaintiff's health and safety.

47. Plaintiff has been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
## (NEGLIGENCE)

48. The above paragraphs are here incorporated by reference.

49. Defendants owed plaintiff a duty of care to protect him against foreseeable risks of harm from other inmates.

50. Defendants breached that duty when, after witness Mr. Singh attack plaintiff once, they again put the two together in a confined place, and failed to take steps necessary to ensure plaintiff's safety.

6

51. Defendant's breaches actually and proximately caused plaintiff's injuries.

52. The injuries plaintiff suffered were reasonably foreseeable results of defendant's negligence.

## THIRD CAUSE OF ACTION
## (CONSTITUTIONAL TORT)

53. All preceding paragraphs are here incorporated by reference.

54. The officers formed an agreement with each other and with other inmates to act under color of law to violate plaintiff's rights pursuant to Article 1, §§6 and 12 of the New York State Constitution.

55. A damages remedy here is necessary to effectuate the purposes of Article 1, §§6 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiff's rights under those sections.

## FOURTH CAUSE OF ACTION
## (42 U.S.C. § 1983- MUNICIPAL AND SUPERVISORY LIABILITY)

56. The above paragraphs are here incorporated by reference.

57. The City of New York failed to discipline, train, or supervise their correction officers regarding protecting inmates from assaults. The City has long been aware that inmate on inmate violence is common at the Riker's Island prison facility. Serious injuries, such as plaintiff's, are frequent occurrences in facilities maintained by DOC. Nevertheless, the City has failed to put in place sufficient protections to ensure that inmates are not exposed to foreseeable and unreasonable risks. Moreover, the City has failed to train its Correction Officers properly respond to risks of inmate on inmate violence. The actions of the individual defendants in this action evidence a lack of proper training of Correction Officers.

58. In addition to the above mentioned policy failures, the City and supervising officers

virtually never discipline officers for not reporting fellow officers' misconduct that they have observed, and they often fail to discipline officers for making false statements to disciplinary agencies.

59. The investigatory body responsible for monitoring officer behavior, the Inspector General's office, also wrongfully allows officers to write their own reports, rather than interviewing officers individually, whereas complaining inmates are interviewed in person for the same incidents. Such a practice allows officers to fabricate versions of events consistently with each other, a practice commonly known to officers as "writing with me". Standard practice for receiving inmate statements concerning the same incidents, however, consists of personal interviews with the inmates. This disparity in investigatory techniques results in officer statements being far more consistent and uniform than inmate statements, and thus far more readily credited.

60. When correction officers are sued for injuries sustained by inmates as a result of violence, if there was no finding of wrongdoing by the officer by the City, the City has a policy of representing correction officers through Corporation Counsel instead of paying outside counsel. This means Corporation Counsel's duty to the individual officers prevents it from reporting problem officers to the Department of Correction. In addition, there is no formal reporting mechanism between the Comptroller's office and the Department of Correction regarding the financial losses to the City resulting from lawsuits related to officers' conduct. This is part of the "total disconnect" between the results of civil suits and individual officers' careers that have been very publicly observed, prior to the incidents in question, by former City Comptroller Alan Hevesi. The Association of the Bar of the City of New York, Committee on New York City Affairs, published a written report in 1990 recommending that the City create

formal reporting mechanisms in cases of police abuse, and the recommendations and reasoning apply equally to suits against correction officers. No such reporting mechanisms had been created by the time of the incidents in question.

61. The above described policies and customs and failures to train, supervise, or discipline demonstrated a deliberate indifference on the part of policymakers of the City to the constitutional rights of persons within New York City, and were the cause of the violations of plaintiff's damages.

## FIFTH CAUSE OF ACTION
## (NEGLIGENT HIRING & RETENTION)

62. The above paragraphs are here incorporated by reference.

63. Upon information and belief, defendant City, through the DOC, owed a duty of care to plaintiff to prevent the injury sustained by plaintiff.

64. Upon information and belief, defendant City, through the DOC, owed a duty of care to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiff or those in a position similar to plaintiff's as a result of the conduct of the City's employees.

65. Upon information and belief, defendant officers were incompetent and unfit for their positions.

66. Upon information and belief, defendant City knew or should have known through exercise of reasonable diligence that the officer defendants were potentially dangerous and were prone to acts of negligence and/or deliberate indifference and/or reckless disregard for the safety of others.

67. Upon information and belief, defendant City's negligence in hiring and retaining the officer defendants proximately caused plaintiff's injuries.

68. Upon information and belief, because of the defendant City's negligent hiring and retention of defendant officers, plaintiff incurred damages described above.

## SIXTH CAUSE OF ACTION
(RESPONDEAT SUPERIOR)

69. The above paragraphs are here incorporated by reference.

70. Defendants' intentional tortious acts were undertaken within the scope of their employment by defendant City of New York and in furtherance of the defendant City of New York's interest.

71. As a result of defendants' tortious conduct in the course of their employment and in furtherance of the business of defendant City of New York, Plaintiff was damaged.

72. The above paragraphs are here incorporated by reference.

73. Defendants, acting under color of law, violated Plaintiff's rights pursuant to §§ 5, 6 and 12 of the New York State Constitution.

74. A damages remedy here is necessary to effectuate the purposes of §§ 5, 6 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiff's rights under those sections.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B. Awarding plaintiff punitive damages in an amount to be determined by a jury;

C. Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: January 25, 2013
Brooklyn, New York

TO: New York City
Corporation Counsel Office
100 Church Street, 4th floor
New York, NY 10007

Officer Varela Shield #9470
Eric M. Taylor Center
10-10 Hazen Street
East Elmhurst, NY 11370

Respectfully yours,

By: Nicholas Mindicino, Esq.
Bar#: NM0437
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Avenue
Brooklyn, NY 11217
P: (718) 852-3710
F: (718) 852-3586
NMindicino@stollglickman.com